IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JERMEL HYDE,
     Plaintiff,

v.

RACHEL, *et al.*,
     Defendants.

Case No. 2:25-cv-02165-JEH

### Merit Review Order

Plaintiff, proceeding *pro se* and currently incarcerated at Centralia Correctional Center, filed a Second Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights at Danville Correctional Center ("Danville"). (Doc. 18). This case is before the Court for a merit review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A. The Court must "screen" Plaintiff's Second Amended Complaint and dismiss any legally insufficient claim or the entire action if warranted. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Second Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

# I

Plaintiff files suit against Defendants Nurses Ashley, Rachel, Rose, Jennifer, and Evelinea, Sergeant Ellison, Lieutenant Dykster, Dr. Ek, and the Warden of Danville.

Beginning on March 12, 2024, Plaintiff alleges he became very ill, could not eat without vomiting, experienced forceful hiccups, and was in pain.

On March 16, 2024, Defendant Nurse Ashley examined Plaintiff, checked his vitals and abdominal area, and told Plaintiff he was constipated. Plaintiff asked Defendant Ashley for something to stop the vomiting, but Defendant Ashley only gave him some "milky chalk like substance," which may have been milk of magnesia. *Id.* Plaintiff told Defendant Ashley there nothing for him to defecate because he had been vomiting for days. Defendant Ashley sent Plaintiff back to his cell. Plaintiff alleges the milk of magnesia did not help, and he continued to vomit.

On March 17, 2024, Sergeant Bunyan and Correctional Officer Nixon called a code-3 after Plaintiff informed them of his deteriorating condition. Defendant Nurse Rose and Correctional Officer Finchum responded to the code-3 and transported Plaintiff to the Healthcare Unit ("HCU") on a stretcher. At the HCU, Defendant Rose checked Plaintiff's vitals, gave him some TUMS, and wrote a pass for him to see Defendant Dr. Ek. Plaintiff alleges he informed Defendant Rose he felt extremely weak, and TUMS would not help. Plaintiff alleges Defendant Rose did not provide further medical treatment and made him walk back to his unit, which Plaintiff claims was equivalent to walking four or five city blocks.

On March 18, 2024, Plaintiff alleges he vomited every 20-30 minutes and experienced bad hiccups. Plaintiff states his throat, chest, and abdominal area felt like sandpaper. Plaintiff alleges he had not eaten between March 12-18, 2024, had no energy, experienced cramps and sharp pains throughout his body, and feared

for his life. Plaintiff's cellmate notified security staff that Plaintiff needed medical attention.

Plaintiff was taken to the HCU where he saw Defendants Nurses Rachel and Jennifer. Plaintiff alleges Defendants Rachel and Jennifer berated him and made comments, such as: "[T]his guy called cod[e]-3 last night March 17, 2024. So what's the problem now." *Id.* at p. 7. Plaintiff informed Defendants he could not stop vomiting, was experiencing extreme abdominal pain, and felt weak. Defendant Rachel allegedly stated: "[W]ell if he [is] having abdominal pains, why is he on his knees?" *Id.* Defendant Sergeant Ellison allegedly said: "[T]hat guy faking. There isn't anything wrong with this guy." *Id.* Plaintiff informed Defendant Rachel he had been vomiting every 20-30 minutes and had been unable to eat from March 12-18, 2024. Plaintiff alleges Defendant Rachel checked his vitals and prescribed a laxative.

On March 18, 2024, Plaintiff also saw Defendant Dr. Ek. Plaintiff told Defendant Ek the nurses gave him milk of magnesia and TUMS, which were ineffective. Plaintiff asked Defendant Ek to run a test to determine what was wrong with him, but Defendant Ek allegedly refused.

Later that day, Defendants Sergeant Ellison, Lieutenant Dykster, Nurse Rachel, and Nurse Evelinea arrived at Plaintiff's cell in response to another code-3. Plaintiff alleges Defendant Rachel "continued her verbal assault" and said: "[T]his guy was just over here, walking back and [forth] to the Healthcare unit all morning." *Id.* at p. 8. Defendant Rachel also allegedly stated: "[H]yde you are wasting my time!" *Id.* Plaintiff alleges he asked Defendant Rachel for her name and I.D. number, which made Defendants Jennifer, Evelinea, and Ellison laugh hysterically.

Plaintiff was transported to the HCU on a stretcher. Plaintiff alleges he attempted to get off the stretcher and nearly fell to the floor. Plaintiff informed

Defendant Jennifer he was in extreme pain, and it was hard to move. Defendant Jennifer took Plaintiff's vitals, and Defendant Ek informed Plaintiff his test results revealed he was extremely dehydrated.

On March 21, 2024, Defendant Nurse Jennifer provided Plaintiff with a pail to vomit in if he was unable to make it to the toilet. Plaintiff continued to vomit uncontrollably. Defendant Ek sent Plaintiff to the emergency room.

## II

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id.* An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

The Court finds Plaintiff allegations are sufficient to proceed on an Eighth Amendment claim against Defendants Nurses Ashley, Rose, Rachel, and Jennifer,

Segreant Ellison, and Dr. Ek, who were allegedly deliberately indifferent to his serious medical needs on March 12-21, 2024.

Plaintiff alleges Defendants Lieutenant Dykster and Nurse Evelinea came to his cell in response to a code-3 on March 18, 2024, and laughed hysterically when Plaintiff asked Defendant Rachel for her name and I.D. number. These sparse allegations are insufficient to proceed on a deliberate indifference claim. Therefore, Defendants Dykster and Evelinea are dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

Finally, Plaintiff named the Warden of Danville, presumably Christine Brannon-Dortch, as a Defendant, but Plaintiff did not include any specific allegations against the Warden in the body of his Second Amended Complaint to demonstrate that she was personally involved in any constitutional deprivation. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). There is no *respondeat superior* under § 1983. In other words, the Warden cannot be liable based only on her supervisory role. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). If prison officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Defendant Warden is dismissed without prejudice for failure to state a claim under Rule 12(b)(6) and § 1915A.

5

### III

In Plaintiff's Second Amended Complaint, Plaintiff states he was "double charged" for the initial partial filing fee. (Doc. 18 at p. 10). Plaintiff states he was charged an initial partial filing fee on June 25, 2025, in the amount of $16.00 and was charged a second initial partial filing fee on June 26, 2025, in the amount of $58.82.

On June 16, 2025, the Court granted Plaintiff's Petition to Proceed *in forma pauperis* and assessed an initial partial filing fee of $58.82. After payment of the initial partial filing fee, the agency having custody of Plaintiff must make monthly payments of 20 percent of the preceding month's income credited to Plaintiff's account to the Clerk and must forward these payments each time his account exceeds $10, until the filing fee of $350 is paid in full.

Plaintiff was not double charged for an initial partial filing fee. As of November 14, 2025, Plaintiff still owes $38.05 for the $350 filing fee.

**IT IS THEREFORE ORDERED:**

1) According to the Court's merit review of Plaintiff's Second Amended Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment claim against Defendants Ashley, Rose, Rachel, Jennifer, Ellison, and Ek based on their alleged deliberate indifference to Plaintiff's serious medical needs on March 12-21, 2024. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) The Clerk is directed to ADD Ashley (Nurse) and Rose (Nurse) as Defendants.

3) Defendants Evelinea, Dykster, and the Warden of Danville Correctional Center are DISMISSED WITHOUT PREJUDICE for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE Defendants Evelinea and Dykster.

4)      This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5)      The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6)      Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7)      If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk

Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8)    This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9)    Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

10)    Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11)    Plaintiff shall be provided a copy of all pertinent medical records upon request.

12)    Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization

8

to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13)    The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: November 14, 2025

s/Jonathan E. Hawley
U.S. District Judge